UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CATHERINE A. MAHONEY,
    Plaintiff,


    v.                               CIVIL ACTION NO.
                                     18-11593-MBB

WELLS FARGO BANK, N.A.,
    Defendant.

**MEMORANDUM AND ORDER RE:**
**DEFENDANT WELLS FARGO BANK, N.A.'S RULE 60(B)**
**MOTION FOR RECONSIDERATION (DOCKET ENTRY # 156)**

**June 23, 2022**

BOWLER, U.S.M.J.

Pending before this court is a motion for reconsideration filed by defendant Wells Fargo Bank, N.A. ("defendant" or "the bank") pursuant to Fed. R. Civ. P. 60(b) ("Rule 60(b)"). (Docket Entry # 128).  Defendant seeks reconsideration of this court's memorandum and order (Docket Entry # 151) (the "order") denying its motion for partial summary judgment (Docket Entry # 128).  Plaintiff Catherine A. Mahoney ("plaintiff") opposes the motion for reconsideration.  (Docket Entry # 163).  After conducting a hearing on May 26, 2022, this court took the motion (Docket Entry # 156) under advisement.  (Docket Entry # 164).

BACKGROUND[1]

---

[1] For further information on the underlying facts of this case, this court refers to the factual background provided in the order (Docket Entry # 151).

This is an action for fraud, violation of chapter 93A of Massachusetts General Laws, intentional misrepresentation/ deceit, and injunctive relief.  (Docket Entry # 70).  Plaintiff alleges that, "as a result of the misconduct of [the] bank," she: "sign[ed] away her interest in [her] family residence"; was subjected "to a campaign of harassment and an unwillingness to negotiate the terms of [a] mortgage loan" that she was unable to pay off and that the bank "should never have [] issued in the first place, given the actual financial situation of the borrower [plaintiff's husband, Mr. Mahoney]"; and now faces foreclosure of her "primary residence."  (Docket Entry # 70, p. 1).

On February 22, 2022, defendant filed a motion for partial summary judgment (Docket Entry # 151) and a motion to expedite briefing and consideration of its motion for partial summary judgment (Docket Entry # 133).  This court allowed in part and denied in part defendant's motion to expedite, explaining (inter alia) as follows:

> Local Rule 56.1 sets out a 21-day time period to file an
> opposition to a summary judgment motion and a 14-day
> time period thereafter to file a reply brief '[u]nless
> the court orders otherwise.'  L.R. 56.1.  Accordingly,
> the rule expressly endows this court with the authority
> to alter these time periods or foreclose the filing of
> a reply brief.  On March 8, 2022, plaintiff . . . filed
> an opposition to the motion to expedite.  (Docket Entry
> # 138).  In order to expedite these proceedings due to
> this court[']s May 6, 2022 retirement, the time period
> to file an opposition to the partial summary judgment
> motion shall be no later than March 14, 2022. The
> opposition is limited to 15 pages.  There shall be no

reply brief.  After the filing of the opposition, this
court will review the papers and determine whether to
conduct a hearing.

(Docket Entry # 143).

On March 25, 2022, this court issued the order, denying
defendant's motion for partial summary judgment (the "order").
(Docket Entry # 151).  Defendant subsequently filed the instant
motion for reconsideration.  (Docket Entry # 156).

DISCUSSION

"The granting of a motion for reconsideration is 'an
extraordinary remedy which should be used sparingly.'"  Palmer
v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citation
omitted).  "Unless the court has misapprehended some material
fact or point of law, such a motion is normally not a promising
vehicle for revisiting a party's case and rearguing theories
previously advanced and rejected."  Id.  "[M]otions for
reconsideration are appropriate only in a limited number of
circumstances: if the moving party presents newly discovered
evidence, if there has been an intervening change in the law, or
if the movant can demonstrate that the original decision was
based on a manifest error of law or was clearly unjust."  United
States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009); see Guadalupe-
Baez v. Pesquera, 819 F.3d 509, 518 (1st Cir. 2016) ("[T]he
motion must either establish a clear error of law or point to
newly discovered evidence of sufficient consequence to make a

difference"). The manifest injustice exception "requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong." Ellis v. United States, 313 F.3d 636, 648 (1st Cir. 2002).

In moving for reconsideration of this court's denial of defendant's motion for partial summary judgment, defendant presents three arguments: (1) this court "mistakenly relied upon[] supposed 'facts'" introduced by plaintiff "concerning [p]laintiff's discovery of the 2005 [l]oan interest rate in 2017 even though there is no genuine dispute that [p]laintiff was well-aware of (and had unrestricted access to) this same information at least as of May 2008"; (2) this "[c]ourt erroneously relied on [p]laintiff's purported discovery of information in the [a]pplication in 2017 when considering [p]laintiff's discovery rule and fraudulent concealment theories"; and (3) defendant "suffered serious prejudice when [this] [c]ourt did not permit it with the opportunity to reply to [p]laintiff's new arguments or newly introduced 'facts.'" (Docket Entry # 157, p. 6). Additionally, although defendant's motion does not allege manifest injustice as a basis for reconsideration, defendant argued during oral argument that it would be "manifestly unjust" for it to have to face this lawsuit. Defendant asks this court to:

"(1) reconsider and vacate . . . [the] [o]rder . . .; (2) consider the additional arguments, documents, and facts submitted in and with [defendant's] motion; (3) grant summary judgment in its favor on Counts I ([f]raud) and III ([m]isrepresentation/[d]eceit) of the [a]mended [c]omplaint . . . in their entirety and on Count II (M.G.L. c. 93A) of the [a]mended [c]omplaint to the extent the claim is based on the other [o]rigination [c]laims, with prejudice and rewarding no recovery to [p]laintiff."

(Docket Entry # 156, pp. 1-2).

Plaintiff opposes the motion for reconsideration, arguing that defendant: (1) has failed to satisfy the "standards required for the extraordinary relief of a motion for reconsideration"[2]; (2) makes "substantive points in favor of reconsideration [that] either ignore the facts or ignore the law"; and (3) "has not been prejudiced" (Docket Entry # 163, pp. 1, 5, 10).

I.   Plaintiff's Affidavit Statement Regarding her Knowledge of the 2005 Loan's Interest Rate

Defendant's first argument is that this court "mistakenly considered [p]laintiff's discovery-rule and fraudulent-concealment arguments based upon a faulty premise advanced by [p]laintiff that is not supported by the record."  (Docket Entry # 157, p. 6).  More specifically, defendant argues that this

---

[2] More specifically, plaintiff argues that defendant has not: "presented newly discovered evidence that was not previously available"; "shown an intervening change in the law since [this] [c]ourt issued its ruling"; or "demonstrated a manifest, clear error of law made by [this] [c]ourt."  (Docket Entry # 163, p. 3).

court improperly credited plaintiff's affidavit statement that, after the 2005 application was submitted, she learned that "the interest rate for the 2005 loan was actually higher than the interest rate for the 2003 loan."  (Docket Entry # 157, p. 7) (quoting (Docket Entry # 151, p. 8) (internal brackets and citation omitted)).  According to defendant, the court was mistaken because "the *only* evidence [this] [c]ourt considered for this was a conclusory, self-serving statement in [p]laintiff's 2009 affidavit"[3] and "because the record . . . shows that [p]laintiff was already well aware of the interest charged on the 2005 [l]oan years earlier."  (Docket Entry # 157, pp. 7-8).

Rather than again recite the applicable law on the discovery rule and fraudulent concealment, this court refers to its discussion of the relevant law in the order.  See (Docket Entry # 151, pp. 19-22, 25-26).  As this court detailed in the order, the parties disagree as to when plaintiff knew or should have known of her causes of action.  (Docket Entry # 151, p. 22).  Based on a review of the record, this court concluded that "the record is sufficiently open-ended to permit a rational

---

[3] Defendant refers to the following statement from plaintiff's affidavit: "I learned in 2017 that the mortgage rate for the 2005 mortgage loan was actually higher than the interest rate for the 2003 mortgage loan."  (Docket Entry # 148-7, p. 2, ¶ 11).

factfinder to resolve [this] material factual dispute in favor

of either side."  (Docket Entry # 151, p. 23) (citation and

internal quotation marks omitted).  According to the record,

this court explained: "Mr. Mahoney managed the Mahoneys'

finances, including with respect to the 2003 and 2005 loans";

"[p]laintiff was not a signatory to the 2003 or 2005 loans (or

the applications for such loans)"; and "[p]laintiff later made

several requests (either herself or via Dailey [her attorney]) to

defendant for copies of the 2005 loan documents."  Plaintiff

alleges, this court noted, that "it was not until defendant

provided a copy of the 2005 loan application in 2017 that she was

aware of the misinformation contained therein."  (Docket Entry #

151, pp. 23-24).  The court further explained that "this [was]

consistent with: (1) Dailey's letter from May 2017, in which he

requested from defendant a copy of the 'previously forwarded'

application which was 'not legible'; and (2) defendant's

response in June 2017, which appears to have enclosed another

copy of the 2005 application."  (Docket Entry # 151, p. 24)

(citations omitted); see (Docket Entry # 149-5, p. 22)[4] (Docket

---

[4] Defendant claims that "[w]hile 'Docket Entry # 149-5' is not
reflected on the docket, the same citation is used throughout .
. . [the] [o]rder with page references to specific letters."
(Docket Entry # 157, p. 10, n. 5).  Contrary to defendant's
assertion, Docket Entry # 149-5 is indeed reflected on the
docket as a sealed entry to which the parties have access.
Defendant also challenges this court's reference to letters from
plaintiff's counsel on the basis that they are inadmissible

Entry # 149-6, p. 1).  As a result, this court concluded that
"[a] rational factfinder could [] find that plaintiff fulfilled
her duty to investigate her cause for concern."  (Docket Entry #
151, p. 24) (citation and internal quotation marks omitted).  It
also determined that "[a] rational factfinder could [] conclude
that, prior to 2017, plaintiff 'had only a belief' as to her
injury and 'could not know the basis for her injury.'"  (Docket
Entry # 151, p. 24) (quoting Harrison v. United States, 708 F.2d
1023, 1028 (5th Cir. 1983) (noting that "[t]he distinction
between knowledge and mere belief has long been recognized by the
courts")) (citing Cogburn v. United States, 717 F. Supp. 958, 962
(D. Mass. 1989) ("[T]here is a difference between having a belief
or a suspicion, and having knowledge of a legal wrong one has
suffered.")).

Based on the foregoing, this court disagreed (and continues
to disagree) that the record "shows that [p]laintiff was already
well aware of the interest charged on the 2005 [l]oan years
earlier" (Docket Entry # 157, p. 8) and that she "had not
fulfilled her duty to investigate her claims because she admitted

---

hearsay.  See (Docket Entry # 157, pp. 10-11).  However, as this
court noted in the order, "[t]o the extent such letters include
hearsay statements, this court considered the letters to assess
plaintiff's knowledge of defendant's purported misconduct that
resulted in the loss of her interest in the property, rather than
for the truth of the matters asserted in the letters."  (Docket
Entry # 151, p. 11, n. 5).  Defendant fails to show that this
court relied on inadmissible evidence.

to having actual physical possession of all files that her late
husband had relating to the 2003 [l]oan and 2005 [l]oan" (Docket
Entry # 157, p. 8, n. 1).  Defendant stressed during oral
argument that the applicable "legal test" is not whether
plaintiff subjectively believed the 2005 loan interest rate was
in fact higher than that of the 2003 loan but rather whether
plaintiff conducted a reasonable investigation into her potential
causes of action.  This court is well aware of the relevant legal
test.  Indeed, it highlighted the reasonable-diligence standard
in the order (Docket Entry # 151, pp. 19-22) and subsequently
concluded that, based on the record (for the reasons noted above
and in the order), when plaintiff knew or should have known of
her causes of action was a dispute of material fact and therefore
a question of fact for the jury  (Docket Entry # 151, p. 23).

In making such determinations, this court – as plaintiff
notes – "follow[ed] well-settled rules governing summary
judgment adjudications."  (Docket Entry # 163, p. 4).  As such,
this court: (1) "reviewed the entire 'record in the light most
favorable to the nonmovant [i.e., plaintiff,]' and made 'all
reasonable inferences in [her] favor'"[5]; and (2) left for the

_____

[5] As this court previously noted, in evaluating a motion for
summary judgment, "[t]he court must examine the 'record in the
light most favorable to the nonmovant' and must make 'all
reasonable inferences in that party's favor.'"  <u>Garcia-Garcia v.
Costco Wholesale Corp.</u>, 878 F.3d 411, 417 (1st Cir. 2017)

jury to resolve the material factual dispute as to when plaintiff knew (or should have known) of her causes of action. (Docket Entry # 163, p. 4) (citation omitted); see (Docket Entry # 151, pp. 3, 22). Moreover, as plaintiff notes, "assessing [plaintiff]'s purported creditworthiness is not the role of [this] [c]ourt at the summary judgment stage." (Docket Entry # 163, p. 4); see Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("[C]redibility determinations are for the factfinder at trial, not for the court at summary judgment.").

Additionally, this court did not err in relying on plaintiff's affidavit statement that she did not know of the increased interest rate until 2017. The Federal Rules of Civil Procedure provide that "[a] party asserting that a fact cannot be or is genuinely disputed [may] support the assertion by . . . citing to particular parts of materials in the record, including . . . affidavits . . . ." Fed. R. Civ. P. 56(c)(1)(A). However, "[a]n affidavit . . . used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." See Fed. R. Civ. P. 56. Defendant does not challenge plaintiff's affidavit statement on

---

(quoting Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 68 (1st Cir. 2015)).

any of these grounds but rather argues that the affidavit statement was "the *only* evidence [this] [c]ourt considered" and it "was a conclusory, self-serving statement." (Docket Entry # 157, pp. 7-8). Moreover, this court did in fact consider other evidence in the record, as detailed above and in the order. <u>See</u> (Docket Entry # 151, pp. 23-24).

For these reasons, defendant has failed to show that this court's "original decision was based on a manifest error of law or was clearly unjust." <u>Allen</u>, 573 F.3d at 53.[6] In addition, defendant has failed to satisfy the other bases for reconsideration, such as the "present[ation of] newly discovered evidence." <u>See</u> <u>id.</u>[7]

---

[6] As noted previously, defendant did not base its motion for reconsideration (Docket Entry # 156) on "manifest injustice" but later argued during oral argument that it would be "manifestly unjust" for defendant to face this lawsuit because plaintiff "sat" on her rights. For the reasons previously iterated, this court finds such argument unsupported and unpersuasive.

[7] Rather, defendant reiterates its prior arguments and also references certain documents produced by plaintiff that purportedly "pre-dat[e] the 2005 [l]oan" and "identify the interest rate [plaintiff] claims to have discovered in 2017." <u>See</u> (Docket Entry # 157, p. 8). This court first notes that defendant does not allege that these documents are "newly discovered evidence," a potential basis for reconsideration. <u>See</u> <u>Allen</u>, 573 F.3d at 53. Accordingly, they do not support defendant's argument for reconsideration. Furthermore, and as this court noted in the order, the record indicates that plaintiff was a homemaker who focused on maintaining the family home and raising the Mahoneys' children while Mr. Mahoney managed the family's finances and mortgage documents. <u>See</u> (Docket Entry # 151, p. 4) (Docket Entry # 130, p. 2, ¶ 3) (Docket Entry # 145, p. 1, ¶ 3). As plaintiff reiterated during oral argument: plaintiff was not a signatory to the 2005 loan

II.   The 2005 Loan Application

    Defendant's next argument is that this court "misunderstood the importance of the [2005 loan] [a]pplication to this case," which defendant maintains "is arguably irrelevant."  (Docket Entry # 157, p. 12).  More specifically, defendant explains, this "[c]ourt made a mistake when it referenced the 'inflated financial' information in the [a]pplication because [p]laintiff's [o]rigination [c]laims do not actually rely upon any allegations of 'inflated financial' information."  (Docket Entry # 157, p. 13).  This court also "mistakenly concluded,"

_____

(or application); the record suggests that she repeatedly requested from defendant a copy of the 2005 loan documents (but did not receive such copies until 2017); even if she had suspected potential fraud or deceit by the bank, such suspicion is insufficient to toll the statute of limitations (which this court discussed in the order); and plaintiff's pre-2017 pleadings to defendant for a reduced interest rate could simply have been an attempt to save her family home rather than an indication that she knew (or should have known) she had been deceived or defrauded.  Also, as plaintiff notes, "her pleas for lower payments—and the fact that she continued to make payments to the [b]ank for years after her husband died—do not exhibit the conduct of someone who suspects the [b]ank of fraudulently and deceptively swindling her out of her interest in her family home."  (Docket Entry # 163, p. 9).  Thus, even assuming that plaintiff had various documents in her possession before 2017 that identified the interest rate she alleges to have discovered in 2017, this court still concludes that "the record is sufficiently open-ended to permit a rational factfinder to resolve [the] material factual dispute" as to when plaintiff knew or should have known of the 2005 loan's increased interest rate (and her resulting causes of action).  See Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).  For these reasons, the various documents that defendant cites do not implicate the extraordinary remedy of reconsideration.  See Palmer, 465 F.3d at 30; Allen, 573 F.3d at 53.

defendant continues, that plaintiff first discovered the true
interest rate of the 2005 loan in 2017.  (Docket Entry # 157, p.
15).

> Plaintiff responds that:
>
> the [b]ank ignores [plaintiff]'s assertion that only in
> 2017, when her attorney received legible application
> materials relating to the 2005 loan did [she] became
> aware that that the [b]ank had used inflated asset and
> income figures on the mortgage application, that its
> true intent in entering into the 2005 transaction was to
> secure its title position (and defeat hers), and that
> the interest rate for the 2005 loan was actually higher
> than that of the 2003 loan.  Both the fraudulent asset
> figures *and* the interest rate obtained in 2017
> contributed to [plaintiff]'s awareness of the [b]ank's
> fraud and misrepresentations.

(Docket Entry # 163, p. 9) (citation omitted).  Consistent with
the foregoing discussion and the order, this court agrees.

In the order, this court discussed the "January 2013"
letter from plaintiff to defendant, which defendant has used as
the focal point of its statute of limitations argument.  See
(Docket Entry # 151, p. 27-28).  This court noted:

> The January 2013 letter indicates that plaintiff was
> 'concerned by the actions of [the bank] in making the
> substantial loan to Mr. Mahoney' and that, as a result
> of her inability to pay off the 2005 loan, she ultimately
> 'lost her interest in the property' without any
> consideration.  (Docket Entry # 150, pp. 2-3).  The
> January [20]13 letter, however, does not indicate that
> plaintiff had *knowledge* of defendant's issuance of the
> 2005 loan based on (as alleged by plaintiff) inflated
> and incorrect financial information and defendant's
> representation that the 2005 loan would be subject to a
> reduced interest rate.

(Docket Entry # 151, p. 28).  Defendant now argues that this "[c]ourt mistakenly concluded that [p]laintiff was not aware in 2013 of the alleged representations about the 2005 [l]oan being subject to a reduced interest rate." (Docket Entry # 157, p. 16).  Defendant misconstrues this court's discussion in the order.  This court did not broadly state that plaintiff was not aware of defendant's issuance of the 2005 loan based on purportedly inflated and incorrect information and defendant's representation of a lower interest rate.  Rather, this court explained that the January 13 letter indicated as much. Furthermore, as explained previously, in adjudicating defendant's motion for partial summary judgment, this court was obligated to review the record in the light most favorable to plaintiff.

Finally, this court emphasizes that defendant's "disagreement with [this] [c]ourt's decision is not a basis for reconsideration." Lyons v. Fed. Nat'l Mortg. Ass'n, No. 1:18-CV-10365-ADB, 2019 WL 1961072, at *3 (D. Mass. May 1, 2019). Defendant has not shown any manifest error of law or other basis to warrant reconsideration and therefore fails to meet the requisite standard for reconsideration.

III. Lack of a Reply Brief

As noted previously, defendant filed a motion to expedite briefing and consideration of its motion for partial summary

14

judgment.   (Docket Entry # 133).   This court allowed in part and
denied in part the motion and held that "[t]here shall be no
reply brief."   (Docket Entry # 143).   Defendant now takes issue
with the fact that this court "unfairly" precluded it from
filing a reply brief.   (Docket Entry # 157, pp. 1-2, 7, 16-17).
According to defendant, it "suffered serious prejudice when
[this] [c]ourt did not permit it with the opportunity to reply
to [p]laintiff's new arguments or newly introduced 'facts.'"
(Docket Entry # 157, p. 6).[8]

    However, defendant itself has acknowledged that this court
has the "inherent authority to adjust [the] briefing schedule"
for Fed. R. Civ. P. 56 motions.   (Docket Entry # 133, p. 3).
Moreover, as plaintiff points out: defendant "had no recourse to
file a reply memorandum as a matter of right" under Local Rule
56.1, which "leaves it to the sound discretion of the trial
judge to forgo the use of reply memoranda in the context of
summary judgment motions."   (Docket Entry # 163, p. 10); see

_____

[8] As a preliminary matter, this court notes that much of
plaintiff's argument in her opposition to defendant's motion for
partial summary judgment was also made in her opposition to
defendant's motion to dismiss (Docket Entry # 17, pp. 6-9), in
her opposition to defendant's motion to dissolve or modify the
preliminary injunction (Docket Entry # 32, pp. 10-15), and in
her reply supporting her motion for leave to amend the initial
complaint (Docket Entry # 55, pp. 3-4).   This court therefore
finds unpersuasive defendant's argument that it could not
anticipate (and properly respond to) plaintiff's arguments in
her opposition to defendant's motion for partial summary
judgment.

L.R. 56.1 ("Unless the court orders otherwise, the moving party may file a reply within 14 days after the response is served."). "In [this] case, [this] [c]ourt saw fit to order otherwise, and [defendant] itself provoked that order."  (Docket Entry # 163, p. 10).  Finally, had defendant been afforded the opportunity to file a reply brief and made therein the points it now makes in support of its motion for reconsideration, the court would have arrived at the same conclusion: defendant is not entitled to summary judgment at this time.  It has failed to show that the statute of limitations has tolled, barring plaintiff's claims.

<u>CONCLUSION</u>

For the foregoing reasons, defendant's motion for reconsideration (Docket Entry # 156) is **DENIED.**


<u>/s/ Marianne B. Bowler</u>
**MARIANNE B. BOWLER**
United States Magistrate Judge